890 So.2d 508 (2005)
Nancy B. PARKER, Appellant,
v.
ESTATE OF Hartford E. BEALER, Appellee.
No. 4D03-3860.
District Court of Appeal of Florida, Fourth District.
January 5, 2005.
*509 Edward Downey of Downey & Downey, P.A., Palm Beach, for appellant.
Jack A. Falk, Jr. of Dunwody White & Landon, P.A., Coral Gables, for appellee.
WARNER, J.
A beneficiary of decedent's will challenges the probate judge's order confirming venue of the probate proceeding in Florida and denying a stay of proceedings in favor of proceedings filed in Maryland. The beneficiary contends that she was not properly served with notice of administration because service was made on her Maryland attorney who was representing her in other proceedings. As there was evidence that the beneficiary had designated the Maryland attorney to receive papers regarding the estate, we affirm.
In 1999, Hartford Bealer, the decedent, moved from Maryland to Palm Beach so that his granddaughter could take care of him. He executed a will in Florida, describing himself as a Florida resident. During this time Bealer's daughter, Nancy Parker, her husband, and Bealer's other children were in substantial intra-family litigation in Maryland over the businesses that Bealer had started and developed. This included filing claims against Bealer himself. Maryland attorney Roy Niedermayer represented Parker in this litigation.
In August of 2001, Niedermayer wrote to Bealer's attorney in Maryland and told him that Bealer was not to communicate *510 with Parker on corporate or business matters; any communications should be made to Niedermayer who would then convey them to Parker. While Parker remained open to communications regarding other family matters, she did not want to communicate with Bealer on matters involved in the litigation. Bealer's Maryland attorney sent a copy of this letter to Bealer's Florida attorney.
Six months later, the situation in the family must have further deteriorated because Bealer's Florida attorney, Jonna Brown, sent a letter to Niedermayer referencing the August letter requiring all communications to the Parkers be made through Niedermayer. Brown explained that Bealer had tried to contact his daughter and grandson around Christmas regarding family matters, but they had refused to speak to him or acknowledge his gifts to them. Brown then informed Niedermayer that Bealer was so disappointed in the conduct of his daughter and grandson that he was seriously considering changing his will. Niedermayer responded with a letter regarding financial and litigation matters, and informed Brown that the Parkers did wish to continue to speak with Bealer on personal matters. However, matters regarding business and the lawsuits should be taken up with the lawyers. Despite this, in a later letter to Niedermayer in 2002, Brown included in her correspondence messages for Parker regarding Bealer's hospital stay and other personal issues.
Unfortunately, Bealer died in early 2003 with the family conflict still ongoing. After the funeral, Parker's husband, Jay Parker, who is also an attorney, told Brown to send copies of the will and estate planning documents to Niedermayer, which she did. Brown testified that Parker had requested her husband to communicate with Brown on her behalf on prior occasions. Brown believed that the communication regarding sending documents to Niedermayer was also at Parker's behest.
Upon the will being admitted to probate, Brown sent a notice of administration to Parker at her Maryland address, but it was returned unclaimed. She then sent it to Niedermayer, addressing him as Parker's attorney. A signed certified receipt was returned. Parker admitted that Niedermayer received the notice. Subsequently, several other documents were sent to Niedermayer regarding life insurance claims and other estate matters. At no time did Niedermayer inform Brown that he was not representing Parker.
In the meantime, Parker filed her own pro se petition to probate the Florida will in Maryland, claiming that Bealer was really a resident of Maryland at the date of his death, even though he had not lived there in three years. The Maryland court did not admit the will to probate, and the matter has been continued in the Maryland courts for over a year.
To prevent the Florida proceedings from being challenged, the personal representative filed a petition to establish venue in August 2003. Parker filed an objection and a counter-petition requesting that Florida stay its proceedings in favor of the Maryland proceedings. When the estate claimed that Parker was time-barred from objecting to venue, she claimed that she had never been properly served in the action. A hearing was held on the venue question at which Brown testified to the foregoing facts, and the letters between Niedermayer and Brown, both prior to and after Bealer's death, were admitted. Parker offered no evidence. The court determined that formal notice on Niedermayer satisfied the requirements of Florida Probate Rule 5.040(a)(3)(A)(i) and that venue was appropriate in Florida. The court *511 also refused to stay the proceedings in favor of the Maryland proceedings.
Parker claims that because Niedermayer was not her attorney of record in the probate proceedings, formal notice on him did not constitute service on her. Although Parker cites American & Foreign Insurance Co. v. Dimson, 645 So.2d 45 (Fla. 4th DCA 1994), as authority for reversal, we conclude that it supports an affirmance of the trial court's rulings. In Dimson, the decedent was in litigation with a corporate creditor in the state of New York. When the decedent died, the personal representative sent a notice to creditors to the corporation's main office. No notice was sent to the New York litigation attorneys for the corporation. The corporation filed a claim beyond the statutory period, and the trial court disallowed it as untimely. Our court rejected the creditor's argument that the notice to creditors should have been sent to the litigation attorneys. We concluded that under section 731.301(1)(a), Florida Statutes (1995), notice to the attorney meant notice to an attorney who had entered an appearance of record in the estate. Of significance to this case, we said:
However, we interpret this provision in its statutory context as reasonably referring to an attorney who has appeared in the probate litigation. In this case, plaintiff's attorney did not appear in the probate proceeding and there was no request made that notice be sent to the attorney.

645 So.2d at 47 (emphasis added). Thus, we excepted a circumstance where the interested person or creditor has made a request for his or her attorney to receive notices from the estate. In this case, on Parker's behalf, her husband made a specific request for estate papers to be sent to Niedermayer. We think this operates as a specific request that notice be sent to the attorney pursuant to Dimson.
Even if the request for the estate papers is not specific enough, we conclude that Parker is estopped from denying that Niedermayer was her attorney for purposes of receiving the notice of administration. In Taylor v. Kenco Chemical & Manufacturing Corp., 465 So.2d 581, 586-87 (Fla. 1st DCA 1985), the court enumerated the elements of estoppel:
The elements of an estoppel are: '(1) words and admissions, or conduct, acts, and acquiescence, or all combined, causing another person to believe in the existence of a certain state of things; (2) in which the person so speaking, admitting, acting, and acquiescing did so wilfuly [sic], culpably, or negligently; and (3) by which such other person is or may be induced to act so as to change his own previous position injuriously.' 22 Fla.Jur.2d Estoppel and Waiver § 31 (1980).
All elements are present in this case. Niedermayer represented Parker in connection with all family business matters, and because of the parties' apparent animosity, even personal messages were directed through Niedermayer, including matters regarding the making of a new will and Bealer's health for at least the year prior to his death. After Bealer's death, Parker's husband, who had communicated in the past with attorney Brown on behalf of his wife, told Brown to send the estate documents to Niedermayer. When the notice of administration was sent to Niedermayer as attorney for Parker, no objection was entered. Nor was there any objection when other estate papers were sent, including forms for the collection of life insurance. "[Her] `silence when it is [her] duty to speak,' should estop [her] from `asserting a right which [s]he otherwise would have had.'" Rubman v. Honig, *512 817 So.2d 1001, 1002 (Fla. 4th DCA 2002) (quoting Taylor, 465 So.2d at 586).
The evidence presented a prima facie case that notice was sent to Parker's attorney who represented her in connection with all dealings with Bealer and his estate in Florida. Parker failed to present any contrary evidence. The trial court's ruling that service of the notice of administration on Niedermayer was proper was supported by the evidence, and therefore Parker's objection to venue was untimely.
Finally, Parker contends that the principle of priority requires Florida to stay its probate of the will in favor of the earlier filed Maryland petition, until Maryland determines the issue of domicile of the decedent. Rulings on motions for stay are governed by the abuse of discretion standard. U.S. Borax, Inc. v. Forster, 764 So.2d 24, 29 (Fla. 4th DCA 1999). Our supreme court has determined that the application of the principle of priority as between courts of sovereign jurisdictions is based upon comity and thus a discretionary decision of the trial court:
In general, where courts within one sovereignty have concurrent jurisdiction, the court which first exercises its jurisdiction acquires exclusive jurisdiction to proceed with that case. This is called the "principle of priority." Admittedly, this principle is not applicable between sovereign jurisdictions as a matter of duty. As a matter of comity, however, a court of one state may, in its discretion, stay a proceeding pending before it on the grounds that a case involving the same subject matter and parties is pending in the court of another state.
Siegel v. Siegel, 575 So.2d 1267, 1272 (Fla.1991) (quoting Bedingfield v. Bedingfield, 417 So.2d 1047, 1050 (Fla. 4th DCA 1982)). However, if extraordinary circumstances are present, a trial court's decision to deny a stay is not an abuse of discretion.
[W]here two courts have concurrent jurisdiction of a cause of action, the first court to exercise jurisdiction has the exclusive right to hear all issues or questions arising in the case ... Absent extraordinary circumstances which do not exist in this case, a trial court abuses its discretion when it fails to respect the principle of priority.
Hirsch v. DiGaetano, 732 So.2d 1177, 1177-78 (Fla. 5th DCA 1999) (quashing order denying stay where a previous contract action involving the same parties and causes of action was filed in Massachusetts and circumstances did not exist to justify denial of stay).
We conclude that the probate court established circumstances that justify the denial of the motion to stay in favor of the Maryland proceedings. Although filed first, the Maryland probate court has never admitted the will to probate, and no proceedings have begun. In contrast, the Florida court admitted the will to probate, notice to creditors was filed, and creditors have filed claims. Estate administration has been ongoing for six months. At the time of the trial court's order, the federal estate tax return was due, and significant adverse tax consequences would occur should the will be probated in Maryland. A substantial increase in the cost of administration would result from granting a stay. Under the circumstances of this case, and the lack of any active proceedings in Maryland, we conclude that the court did not abuse its discretion in denying the stay of the Florida proceedings in favor of the Maryland proceedings.
Affirmed.
FARMER, C.J. and SHAHOOD, J., concur.